Our next case is a combination of cases. We're going to refer to it as 21-3096, 21-3097, 22-1108. Why don't I just call him Barlow? I'm not good at math. Oh, let's go in there, Your Honor. Oh, okay. All right. I'll say Barlow. We'll call him Barlow. We're kidding. Good morning. Good morning, Your Honor. Stephen Edwards for the appellants. With the Court's permission, I'd like to ask for three minutes of rebuttal time. Sure. Thank you. This case comes down to the vitality of this Court's constitutional waiver jurisprudence. Wait, wait, wait. The rabbit's going into the hat again. Doesn't it just come down to whether or not there's an enforceable contract here? Yes, Your Honor. That's a relevant issue, and we think there is not. That's the issue, isn't it? It is not the issue. The constitutional waiver analysis, which applies here because constitutional rights are involved, looks beyond contract formation. It unmistakably does so. That was the case in the Supreme Court's decisions in Fuentes and Overmyer. It's the case in Erie Telecommunications and Democratic National Committee from this Court. All those cases involved contracts. No one claimed in those cases that a contract was not formed. And yet, looking beyond that, the Court considered the knowing, intelligent, and voluntary prongs of the waiver test. You're a complainant. Are you alleging that your clients did not understand that they were giving up their right to withhold the money when they signed the agreement? They were giving up their right to resign, become a nonmember, and not pay the union any amount of money. And they didn't understand that when they signed the contract. That's what you're alleging. That can't be established without discovery, Your Honor. You have to allege it, though, don't you? They voluntarily signed these agreements, right? Yes. We're not claiming duress or coercion or anything like that. Are you contending that Janus has to do with waiver law? Janus is about waiver? Part of it is, Your Honor, yes. I think that the second-to-last heading in the opinion unmistakably sets out a waiver analysis. It says, the most important sentence in that passage says, by agreeing to pay, nonmembers are waiving their First Amendment rights, and such a waiver cannot be presumed. Following that sentence is a citation to three Supreme Court cases dealing with the waiver of Federal rights. Has any court ---- But, you know, at the end of the opinion, throughout the opinion, the reference is made to compelled subsidization, compulsory subsidization, forced subsidies. Isn't that the essence of what we have before us, that there is no compelled or compulsory or forced subsidy here because they signed an agreement? Why do we need to go further than that? Your Honor, the mere fact of signing the agreement is not dispositive because of the strictures of the waiver test. The waiver test, again, looks beyond the mere fact of contract formation. Tell me your best case. The best case. Any case. Any case that supports your position. Sure. I think that the Fuentes and Obermeyer cases from the Supreme Court are very similar. They involve voluntary contracts. I think you can put it this way. Think about it this way. If you look at the facts of Fuentes, Obermeyer, Erie Telecoms, and Democratic National Committee from this court, in all those cases you had voluntary contracts. People sat down at a table, put their signature on a piece of paper, and yet the court did not analyze the problem in terms of did you sign the contract, yes or no, case over. The court looked beyond that. The court looked at the party's knowledge of what they were giving away, whether they were sophisticated enough to understand the constitutional gravity of what they were doing. It is not simply a question of voluntary agreement. I'm trying to find, going back to what you said a little while ago, the second-to-last heading. I'm looking at the opinion now. In the majority opinion, there really ain't no headings. There's just alphabetic demarcations of various sections. So I assume you're referring to Section D, as in David, which is the second-to-last subsection of that opinion. But if that's what you're referring to, I don't see where that section ties in with the argument that you're making or the meaning that you're ascribing to that part of the court's opinion. To be honest, Your Honor, I do not remember the Roman numeral or the letter ascribed to the section, but I do know that the section begins with the sentence. In some cases, reliance provides strong reason for adhering to established laws. No, that is before what I'm referring to. Okay. So I'm almost certain it's the heading right before the last heading where the court says, we reverse. So in that section, you will find the relevant waiver passage. I'm looking now for where it says, we reverse. I see it is so ordered. I'll find it. Yeah. I think that the page number for the Supreme Court reporter is 2486. Okay. That's helpful. If that helps. It does. How do you reconcile your position with Lespina? So Lespina involved completely different facts, Your Honor. Lespina was primarily about the plaintiffs trying to claw back money they had paid before Janice came out under the agency fee regime. There is a small component of Lespina that dealt with post-resignation dues. However, it's wholly distinguishable from this case in that the post-resignation dues in that case were due to the administrative lag of unions adapting to the Janice world after Janice came out. It's not about a contract deliberately creating an opt-out window and deliberately restricting someone's ability to resign without paying the union. So in that sense, Lespina is wholly distinguishable. When you say restrict, there's a procedural step imposed, but there's no substantive restriction other than a procedural one. Basically, give them union notice is what they're asking. Is there anything beyond that that they're requiring? Respectfully, I would disagree with that characterization, Your Honor. I think that it's very much a substantive restriction in that absent this restriction, resigning comes with the right to not pay the union anything. So the fact that you are, by signing the agreement, agreeing to payment after resignation, you are restricting what the exercise of that right is going to do to you substantively. So the Ninth Circuit got it wrong? Absolutely. I think that the Ninth Circuit's decision in Belgao basically oversimplified the issues in this case with a categorical rule that is simple and easy to apply, but that nonetheless flies in the face of the Supreme Court's decisions in Fuentes and Obermeyer and this Court's decisions in Erie Telecoms and Democratic National Committee. And I think that the other circuits that have followed this approach have simply fallen in behind it because it's simpler to do what the Belgao Court did. It's simpler to say that every time someone signs a voluntary contract, they have, quote, self-imposed any burdens on speech involved in the contract. But the constitutional waiver analysis, which, again, has been applied in a contractual context over and over and over again, requires much more nuance than the Belgao Court admitted into its opinion. Your Honor, I'd like to address the root of the bad reasoning in Belgao and that has been carried forward, unfortunately, into this Court's non-presidential decision in Fisher. That is the misreading of the Supreme Court's Cohen case. The Fisher Court and the Belgao Court and all the other courts that have addressed this issue have read Cohen as establishing a broad, there cannot be a waiver analysis because any restrictions on speech are, quote, self-imposed. So what would this waiver, let's assume we send it back, right? What would this waiver analysis look like if you were writing the opinion? So, Your Honor, we would seek discovery about the individual circumstances under which each appellant signed his or her membership card. We would ask them questions concerning what their understanding of their rights as a public employee are with respect to union membership, paying the union, et cetera. And that informs whether at the time they signed the card they engaged in a knowing and intelligent waiver of their rights. You're arguing that a unilateral mistake of fact, which is in no way induced by the other contracting party, gives rise to basically arguing rescission, gives rise to rescission. I think that, well, that's... That's what you're arguing contractually. You've got a unilateral mistake of fact is what you're trying to argue. And because of the unilateral mistake of fact, even though that mistake is in no way induced by the other party, the person who makes the mistake is entitled to rescind the contract. Well, I think that the, it's, I would not characterize so much as mistake as ignorance. It's a, it's a, they're giving up a constitutional right by agreeing to be bound by these contracts. Well, you're saying that at the time they signed it, they apparently thought that if they withdrew from the union they could immediately get their dues back. Well, not necessarily. You always thought they could refrain from paying their dues in the future. That's, Your Honor, that's not true with respect to all of the appellants. Some of the appellants signed the cards before Janus had been handed down. So they, it was, they could not have had that understanding. They could not have thought at the time they could resign without paying dues. It was an unrecognized right at that point. What about the other group, the larger group? The larger group, the waiver analysis would still apply to them. The, we'd still need to conduct an individualized inquiry into whether they understood their rights at the time they signed the contract. I still can't get over the fact that they agreed to pay. There's no defense to their agreement to pay. The way you get a compelled speech under Janus is when they actually, you know, were forced to pay. But here where they agreed to pay, and what are they trying to do? They're trying to get their money back, correct? That's the relief ultimately, yes. Okay. But they agreed to pay. What more do we need to know? Well, Your Honor, I would say that compulsion enters the picture here when our clients resigned from the unions and explicitly said that they no longer consent to the dues being paid. Well, but they said this voluntary authorization assignment shall be irrevocable, regardless of whether I am or remain a member of the union. I don't know how there's any defense based upon. I thought they said they didn't knowingly agree. I thought that's where your whole waiver argument was going. Right. They did not knowingly agree about the constitutional rights involved in such an agreement. Well, that's different. They did knowingly agree, as Judge Rendell said. You're saying, well, yeah, they knowingly agreed, but they didn't understand the black-letter law surrounding that agreement, that they had a constitutional right not to agree. Right, and that is the relevant question. I think if you, again, if you look back to this Court's cases in Erie Telecoms and Democratic National Committee, those cases weren't over based on the face of the contract. Erie Telecoms is a great example because it involves a similarly clear and categorical contract. The case there, in that case, the plaintiff had signed a release, surrendering all claims whatsoever against the city of Erie. There was a waiver. There was a waiver, but the Court did not decide that there was a waiver merely by reading that clause and washing his hands of the case. The Court looked at a number of factors, including, most importantly, what the state of the law was at the time the party entered the contract. Again, we don't have an issue of waiver here. I've agreed to pay. Agreed to pay. How do you get out of agreeing to pay? If that's the remedy that they want as compared to the remedy is I want to be able to speak, but if the remedy is give me my money back, I don't know how you get beyond the fact that I'm agreeing to pay. I don't think you're in waiver law. Well, I think that, again, it's not a question about whether the person, the act they're agreeing to is clear. So, again, let's take this. It is clear. You're not arguing about that. We all agree. Right. It is clear. You're not arguing any kind of fraudulent inducement or anything or any mistake, unilateral mistake. They clearly understood what they were doing. You're arguing they didn't understand the legal protections they may have had surrounding what they were doing if there were any. Right. Other than you're reading the document. Well, I think also I would like to back up on that a little bit. So, from the district court, from a more pragmatic perspective, you're suggesting that each individual plaintiff would be deposed with respect to their understanding of their First Amendment rights when they sign a contract to join a union. That's the dispositive question? Well, when they sign a contract. What union dues? After resignation. When they don't want to do what they said they would do, basically. Right. Yes. And they have to have a thorough understanding of their First Amendment rights. Yes. That's what the – I mean, that is what the – I'm talking about an individual in that world. Who's going to – who's in the room explaining the First Amendment? There's not – it doesn't matter who. I mean, they could have independent knowledge from their own research. If we find that a particular public employee is a constitutional law nerd and they've read up about Janus and know what their rights, that person would have knowingly and intelligently waived their right. It doesn't – it's not so much about the source of the knowledge. It's more about whether the knowledge exists, whether the person understands what they're giving away. Each individual plaintiff would have to go through that demonstration under your matrix. Yes, absolutely. I mean, because each of these – sorry. As a matter of fact, isn't that the analysis if they said, I want to speak in a way differently from the union? Then you'd have to analyze whether they effectively waived their right. But when they say, I don't want to pay, I still don't get how you get into waiver. Well, Your Honor, I think that the well-established principle of First Amendment law, that subsidizing or giving money to a political entity like a public sector labor union is a speech act. I think that Janus makes that absolutely clear. So this does involve speech rights. The fact that this money does not in any way obviate the First Amendment gravity of what the appellants here are doing. Why wouldn't the language of the contract itself be sufficient to get around this whole waiver issue? They're being told, look, if you sign this, if you withdraw from the union, we're going to continue to deduct your dues unless you do X, Y, and Z. And this is a time requirement in which you must do X, Y, and Z. They read it. They understood that. Why wouldn't that be a sufficient waiver? Because that language in itself does not explain the constitutional rights involved. It doesn't explain that the person has the ability to not do that at all. I mean, it doesn't explain. I don't agree with that. If I'm not in the union, they clearly know the political nature of labor unions these days. They must have understood, I'm not going to sign that because if I'm not in your union, I don't want you taking my money anymore. That doesn't take knowledge of Marbury v. Madison or the whole thing with Peter Zenger. That basically means if I'm not in my union, you're not going to take my money. What's more sophisticated than that is required? Your Honor, I don't think you can assume, first of all, that every public employee knows the political nature of public sector unions, that they know how their money will be used once they give it to the union. That presents a fact issue that we need discovery on with respect to each individual appellant. But to address the Court's broader questions about whether this is a waiver, whether the contract ends the analysis, I think that that categorical principle, while seductively simple, is wholly irreconcilable not only with this Court's waiver precedent, not only with the Supreme Court's decisions in Fuentes and Obermeyer, but a host of other circuit decisions that apply a waiver analysis to contractual rights, contractual agreements, even when the language of the contract is clear. I would point the Court to the Fourth Circuit's decision in the Lake James Community Fire Department case. That case involved a very clear waiver, at least on its face, of a fire department giving up its right to sue over a change in its geographic area of responsibility. There, the Court only found a waiver after examining whether the fire department's counsel was aware of the right involved before signing the contract. You can also see the same thing going on in the Davies v. Union High School case from the Ninth Circuit. That case involved a public school teacher signing a contract saying he was going to give up his right to run for elected office. Again, in that case, the Court analyzed whether it didn't just look at the contract, it didn't just look at whether the terms of the contract were clear, it looked at whether the waiver was knowing and intelligent. And actually, in that case, the Court went further and also analyzed whether the waiver would be against public policy. So taken together, all these cases show that this is not simply a question of whether the contract is clear and whether the person voluntarily agreed to it. There is a separate body of law dealing with the waiver of constitutional rights that actually controls. And I see that my time is up, if there are no more questions. Well, we'll see you on rebuttal. Okay. Thank you. Good morning. Good morning, Your Honor. Ramya Ravindran. I represent the union athlete AFSCME Council 13 in the Fultz case. The issue in this case is whether a plaintiff who made a voluntary choice to join the union, become a union member, and signs a membership agreement in which they expressly agree to pay membership dues for a specified period of time, can state a plausible claim for relief that their constitutional rights were violated when they paid the membership dues that they had voluntarily agreed to pay. Every court to have considered this issue, including the district court here, has answered that question no and held that paying union membership dues that you expressly agreed to pay for precisely the period of time that you had expressly agreed to pay them does not infringe on any constitutional rights. Well, Mr. Edwards is arguing that every court that's considered this, including the district court, got it wrong, and they were very simplistic in their analysis, and they didn't really dive deep into the constitutional waiver issue. Why is he wrong? Well, that position is wrong because it rests on a misreading of the Janus opinion. So Janus, and this court explained this in its Lisbena decision, there's a fundamental distinction between union members, people who made a voluntary choice, affirmatively made a decision to exercise their First Amendment right and join a labor union, and who then later might change their mind and resign, and the nonmembers that the Janus court was addressing. And this is in section 7, Roman numeral 7 of the Janus opinion, the paragraph that the plaintiffs are relying on. And the Janus decision involved employees who, unlike the plaintiffs here, had declined union membership, never entered into any agreement with the union,  And it was in that context, in the second-to-last paragraph of Janus, that the Supreme Court was discussing the concept of waiver. So whether somebody like Mr. Janus, who was making compelled agency fee payments, whether someone in that position, through silence or inaction, could be deemed to have consented to pay, and the court was discussing that there has to be some affirmative consent to agree to pay. But nowhere in the Janus opinion does the court suggest that something more than an express agreement was needed before dues could be collected from a union member, people who had taken affirmative steps to demonstrate their agreement to become a union member, and the subsequent financial obligations that go with receiving the rights and benefits of union membership. And that's what I said, looking at that section now, and I see the language. Rather to be effective, the waiver must be freely given and shown by quoting, double-quoting, clear and convincing evidence, and then afterwards all the string cites. Unless employees clearly and affirmatively consent before any money is taken from them, that standard cannot be met. But I know your colleague on the other side wants us to read into that the kind of waiver scrutiny that you get under a criminal law inquiry. But I don't get that at all. It's basically saying it has to be freely given, using the court's language. In other words, you can't put masking tape over that part of the contract, have them sign it, then took off the masking tape and say, well, if you sign this document, that's not what they're talking about. That's right. And the reason, and again, you have to put that paragraph into context, because what the issue in Janus was, was whether someone who had never indicated any agreement to financially support a union could be compelled to pay money to the union and what type of consent was needed for someone in that circumstance to demonstrate affirmative consent. Union meant, you know, pre-Janus, there was always a choice of whether somebody wants to join the union or not join the union. Prior to Janus, these plaintiffs all had the option of declining union membership. And as it states on the face of the agreement that they all signed in this case, that membership was voluntary, it is not a condition of employment, and it's expressly stated that membership also means an annual term of membership dues, in the language that Judge Rendell read, regardless of whether I am or remain a member of the union for that membership term. And the payments that are being challenged as unconstitutional here are precisely the payments that these plaintiffs consented to paying in the signed written agreements that each of them entered into. So there's no compelled speech, which is what the Janus court was addressing, was compelled payments. That simply does not exist here on the face of the agreements that these plaintiffs signed because they all agreed to make the payments that they're now challenging as unconstitutional. I was going to say, Mr. Edelman's argument, I think he's arguing, he can correct me if he's wrong, they didn't really understand what they were agreeing to, and they had to have some full-blown explanation, i.e. almost tantamount to the kind of waiver we look to in the criminal context, in order for them to have fully understood what they were signing. And I think that is his argument. The problem with that is that it rests on decoupling the decision to join a union with the payment of membership dues, which, again, that's not what Janus holds, and no case has held that. Once these plaintiffs exercised their First Amendment right, which they had a choice, they could join the union or not join the union both before Janus and after Janus, and they exercised that choice and decided to join the union. There has never been any type of constitutional right to be a union member but pay less than the full dues that are charged by the union, or to pick and choose these are what I want my membership dues to go towards and not what my membership dues goes towards. So your reading of that Section 7 in Janus is that we're talking strictly about the deduction that happens for nonmembers. And that deduction doesn't waive unless they have agreed to pay. But we're not going by agree, if they did agree to pay, i.e., that deduction, they said, okay, take the deduction, we're fine. They're waiving their First Amendment rights, but we're not going to say that waiver can be presumed, but it's specifically related to the deduction. So it's kind of a, we're recognizing that they have a First Amendment right, but if they did, if there was a consent by them, then the outcome would be different. That's exactly right. And that's what this, you know, this, the panel in the non-presidential decision of Fisher addressed this exact issue. It's in footnote 18 of the opinion, and that's what the court says. I see I'm eating into my co-counsel's time, so I'll wrap up quickly. But, you know, it says the waiver analysis is needed if, in the absence of the waiver, there would be compelled speech, which was the situation in Janus. But that's simply not the situation here, because we are only talking about payments that these plaintiffs agreed to pay. Thank you. Morning. Good morning, and may it please the Court. I'm Scott Cronland. I represent SCIU Local 668, which is the union defendant in the Barlow and Bittescombe cases. Facts of that case are essentially the same as in Fultz and the same as in the cases in the Five Circuits that have already rejected the same argument that's presented here. The word waiver is a vague word that doesn't really fit what's going on here. The plaintiffs here exercised their First Amendment rights by choosing to join a union, agreeing to pay dues. Whether they paid them in one lump sum or they agreed to pay them in annual installments, they exercised their First Amendment rights, and that's why the word waiver doesn't fit. What the court was saying in Janus was simply that the government couldn't presume that non-members wanted to support the union unless they objected. A completely different situation. These aren't non-members, and they're making an affirmative decision. In the history of U.S. jurisprudence, we're not aware of any case in which an agreement by one private party to pay money to another private party was held unenforceable for First Amendment reasons. It would be a... But this is more narrow than that, because here there's an agreement that impacts First Amendment interest, political speech interest. Well, so does my subscription to a magazine. My annual subscription to a National Review magazine would be enforceable under contract law. It's not an impingement on my First Amendment rights if I choose to subscribe to National Review magazine for a year. If you decide... I'm not sure I followed that analogy. You can stop paying at any time, and National Review does not continue to debit your credit card. Well, they can sue me, and the court will order me to pay for the rest of my subscription. That's not an impingement on my First Amendment rights. Well, very interesting. You're saying if you subscribe to a magazine for a year, decide you don't like the magazine, and ask for your money back, the magazine may well keep your subscription fee until the end of that year, whatever term you subscribe for. That's what you're arguing. Yes, it's just a contract. This is no different. There's nothing constitutionally suspect about unions. And just in regard to waiver, which this really isn't, outside the context of persons pleading guilty or persons in custody, we don't require that people know the terms of a constitutional right to waive them. Saying, yes, it's okay to search my trunk, is a waiver of Fourth Amendment rights, even if one doesn't know that there is a Fourth Amendment. So it's strange to suggest that not only is this not a waiver at all, because it's an affirmative decision to join the union, but to suggest that if there were a waiver, it would require knowledge of the First Amendment, would basically be treating voluntary decisions to join a membership organization as equivalent to a suspect in criminal custody who needs to be Mirandized. And there just isn't support in constitutional law, even about waivers, for the requirement that people have knowledge of the specific constitutional right at issue. These are very, very clear agreements. They state on their face, yes, I want to be a member of the union. They state on their face that the person is agreeing to pay dues for a year. And they even state that it's a contractual agreement between myself and SCIU Local 668. It's hard to imagine an agreement that's clear as an exercise of First Amendment rights to voluntarily join an organization. So we would submit that every court to decide this issue has not gotten it wrong, and we would urge the court to follow the consensus on this particular issue. Thank you. Good morning, Your Honors. Good morning. May it please the Court. My name is Michael Scorinci. I'm a Deputy Attorney General with the Pennsylvania Office of Attorney General. I'm here representing the Commonwealth-named officials. The Commonwealth-named officials agree with my friends in the union on the merits. However, I think, at least with respect to my clients, you don't actually need to reach the merits because there's no live controversy. I'd like to take the three cases and divide them into two. If you take Barlow and Bittescombe on the one hand and the false appellants on the other, Barlow and Bittescombe, the case is moot. The only relief sought against my clients was declaratory and injunctive relief because the allegation was that we had continued to deduct the dues. Those dues have no longer been deducted. That's undisputed in the record. It's for that reason that the district court dismissed the case as moot. My friends here, the appellants, have not contested it. I think they've conceded that at three different places in their brief, page 9, footnote 2, page 10, footnote 4, and page 15, footnote 5. So I think we can put Barlow and Bittescombe off to the side. And as for the false appellants, our contention is that they lack standing. We're relying primarily on the decision you authored, Judge Restrepo, in Lispina, that there's no constitutional injury and no causation. No constitutional injury for all the reasons my friends have talked about here, that Janus simply is about non-members who were compelled to pay. In that case, in Janus, it was because of a statute that they were required to pay. So there was no constitutional injury. There was also no causation because, again, they signed freely these authorization cards. To put it simply, it's a self-inflicted wound. Our position, again, is that there's no live controversy. However, if you do find there's a live controversy, we agree with our friends at the unions that there's been no claims stated. If you have no questions, I'm happy to rely on my brief, Your Honor. Any questions? Thank you. Thank you. Thank you. Were counsel's representations with respect to your concessions accurate? Which ones do you mean, Your Honor? From the Attorney General's office. That the deductions have ceased? Right. Yes, Your Honor, that's correct. We have that in our brief. Do you agree that Section 7 is speaking to the issue of the deduction from a non-member's wages? That's the exclusive way or context in which this topic of consent and waiver appears. Yes. If so, then how does waiver come in at all when you're talking about member's wages and a member's agreement to pay? Because I think that there's two points to that. First, I think that it's impossible to logically read that section of the Janus opinion in the way that the appellee's urge is simply only meaning non-members in an agency's shop, as were the facts in Janus. But I thought you disagreed that that provision only has to do with the deduction of non-members' wages. Right. And our clients became non-members when they resigned from the unions. Oh. That is our argument. But it's not in that context. It says deduction. This is the automatic deduction that happens when you're a non-member. It's not a deduction that happens by agreement, is it? It's not the same. Well, the deductions in this case did continue after resignation for our clients. But by agreement they did. Well, by an agreement that we think is illegitimate. But, yes, it's not. They weren't in an agency shop. Well, actually, that's not true. Some of them, the public employees who signed their agreements before Janus, they did. When they chose to sign the agreement, they faced a choice between agency fees and joining the union. So they were in an agency shop at that point, some of the appellants. I'm going back to being a district court judge. And are you suggesting that the individual plaintiffs would have to be, in essence, harkening back to Mr. Cronlin's argument, in essence, Miranda, a tough situation, given a full-blown explanation of the rights they're giving up? That's the clearest way that the government would be able to prove its case in this. I think it's critical to point out that the burden is on the party relying on a waiver to establish it. You can't presume a waiver based on engaging in an agreement. I think that's – you can – the analogies to – the appellees resist analogies to the criminal context. And they say that – Well, he made – Mr. Cronlin made a very good analogy to the Fourth Amendment context. The magazine thing, something about it doesn't really work because there's no state action there. But what is the analogy – what about his Fourth Amendment analogy? If an officer walks up to me and says, can I look in your trunk? I say, yeah, check it out. Because I think I really carefully concealed the drugs in the wheel well of the trunk. I don't realize the guy's got a dog in his car when he comes along. I say, well, wait a minute. I didn't know I had a right to refuse to search. That's what you're arguing. Before – and the Supreme Court is absolutely crystal clear on that. The officer does not have to inform the occupant of the car of his or her right to refuse to search. Just ask, can I search your trunk? That's it. And if you say yes, you've got a valid waiver. You're saying in this context more is required. You're talking about, as Justice Tupper said, a Miranda-ized situation. Your Honor, the case from which that Fourth Amendment principle arises, the Schneckloff v. Bustamante case – it's really a mouthful. But that case specifically reasoned that the reason that it was not – it is not a practical rule to require the officer to advise the person of his right to refuse was based on the fluid, on-the-ground realities of policing. That case did not create a general principle applicable to all constitutional rights that any time you consent, you have thereby automatically waived. That is a misreading, an over-reading of that case and that principle generally. With a few – if I may take a few seconds over my time to just make a few very quick points, I want to respond to the categorical claim that counsel made that there is no case in the history of U.S. jurisprudence that has ever applied a waiver analysis to a contract to pay another party money. That is the Obermeyer case from the Supreme Court. That case involved settling a debt. It involved installment payments for the construction of a refrigerator at a warehouse. And the court did not simply look at whether a contract existed. It looked at whether by agreeing to a confession of judgment clause, the party understood that it was giving up its due process right to notice in a hearing before judgment could be entered into. I've been thinking about confession of judgment clauses actually since I started reading your brief because you can make a very tentative analogy to a confession of judgment clause. But it seems to me all the cases surrounding confessions of judgment and casting doubts about their validity, that's a very, very different situation than we have in this contract. This is not a confession of judgment contract. Well, we don't – you don't have to use that analogy because there are First Amendment waiver cases involving contracts as well. I mean, I think that's exactly what Erie Telecom's – That's what he was asking, other than the confession of judgment contracts. What other cases are out there? There are many. I would say in this court cannot – You know, I used to be in state court. Whenever I asked for a specific case or cases and the lawyer told me, oh, there are many, Your Honor. Oh, I'm sorry for winding up to my answer, but I can absolutely give you specific case names. I think that the Erie Telecom's and Democratic National Committee cases are precedential decisions from this court that involve the same thing. They're unavoidable that this court must at least distinguish if it's going to rule against appellants in this case. Again, as I mentioned in my opening remarks, I would point to the volunteer fire department case from the Fourth Circuit. I would also point to the Overbay v. Mayor of Baltimore case from the Fourth Circuit from 2019. That case also – that case involved a settlement agreement with a nondisparagement clause. The terms of the nondisparagement clause were clear. It was very clear what the person was agreeing to do. But despite that, the court went on to analyze whether the waiver was against public policy and then in the course of doing that, affirmed that the voluntary knowing and intelligent test should apply. I think I'm taking liberties with the court with my time, so if there's not anything else to ask about, I will sit down. Thank you. Thank you. Counsel, thank you very much for your brief and your arguments. We'll take this case under advisement and circle back to you.